STATE of Maine

v.

Lee P. WALSH.

Supreme Judicial Court of Maine.

Argued March 20, 1989.
Decided May 4, 1989.

David W. Crook, Dist. Atty. and Pamela J. Ames (orally), Asst. Dist. Atty., Augusta, for the State.

William Maselli (orally), Andover, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

**McKUSICK, Chief Justice.**

After a jury trial in the Superior Court (Kennebec County; *Alexander, J.*), Lee P. Walsh was convicted of rape, 17–A M.R.S.A. § 252(1)(A) (1983), gross sexual misconduct, *id.* § 253(1)(B) (1983 & Supp.1988), and terrorizing with a dangerous weapon, *id.* §§ 210, 1252(4) (1983). The court imposed consecutive sentences of 20 years for rape and 5 years for terrorizing. Because the gross sexual misconduct conviction was based on the same facts as the rape conviction, the court ordered "no sentence [on that count] as long as rape conviction remains valid." On appeal Walsh contends

that the duplicative convictions nevertheless violate his constitutional protection against double jeopardy, even though he received a sentence only on the rape conviction. We agree, and we vacate the judgment convicting Walsh of gross sexual misconduct. Walsh also contends, although he made no objection at trial, that prosecutorial misconduct deprived him of a fair trial and that the consecutive sentences for rape and terrorizing are unlawful, but on those points we find no obvious prejudicial error and affirm the judgments of the Superior Court on those counts.

The central facts, except for the identity of the man responsible for the criminal acts, are not here in dispute. As the thirteen-year-old victim was walking home in Winslow one morning, a stranger forced her into a wooded area. He raped her at knifepoint and then threatened to kill her if she ever told anyone. Later he made several threatening phone calls to the victim as well as to her mother. At least once he confronted the victim personally. The victim suffered a nervous breakdown and attempted suicide. Giving intentionally confusing answers to investigators, she would not identify Walsh as her attacker until convinced he was safely in police custody.

## I.

The only substantive difference between the crimes of rape, 17–A M.R.S.A. § 252 (Supp.1988), and the variant of gross sexual misconduct here charged and proved, *id.* § 253(1), is that rape under the Criminal Code retains the common law requirement of "sexual intercourse" with vaginal penetration, *id.* § 251(1)(B) (1983), whereas this variant of gross sexual misconduct occurs upon any contact between genitals, whether or not there is vaginal penetration, *id.* § 251(1)(C).[1] We have had

---

1. The statutory definitions of the crimes of rape and Class A gross sexual misconduct now read as follows:

   **§ 252. Rape**
   1. A person is guilty of rape if he engages in sexual intercourse:
      A. With any person, not his spouse, who has not in fact attained his 14th birthday; or

   B. With any person and the person submits as a result of compulsion, as defined in section 251, subsection 1, paragraph E.

   . . . .

   **§ 253. Gross sexual misconduct**
   A person is guilty of gross sexual misconduct
   1. If he engages in a sexual act with another person and:

occasion twice recently to discuss the impropriety of multiple convictions for rape and gross sexual misconduct when the "sexual act" on which the gross sexual misconduct charge is based is the genital contact involved in the "sexual intercourse" on which the rape charge is based. *See State v. Thornton,* 540 A.2d 773, 776–77 (Me.1988); *State v. Poulin,* 538 A.2d 278 (Me.1988).

We are now faced with a further question not resolved in those cases: What is the proper action for the Superior Court to take when it determines that multiple convictions would be barred under *Thornton* and *Poulin?* Here the rape itself was the only sexual act of which the State presented evidence, and Walsh moved for judgment of acquittal on the gross sexual misconduct count at the close of the State's case. The presiding justice properly denied the motion, explaining that both charges should go to the jury because the jury might rationally find gross sexual misconduct beyond a reasonable doubt even if unconvinced that Walsh had succeeded at penetration. *See State v. Thornton,* 540 A.2d at 777 & n. 11.

■ The jury then returned guilty verdicts on both counts, posing the same dilemma present in *Thornton* and *Poulin:* judgments of conviction on both counts would constitute double jeopardy, whereas a judgment of acquittal on either count would invalidate a verdict on that count that was in fact supported by the evidence, and it would foreclose retrial on that count were the other conviction overturned on appeal or on post-conviction review. The presiding justice in the case at bar sought to avoid the double jeopardy problem after the jury returned the double verdicts by entering a judgment convicting Walsh of rape and gross sexual misconduct, but imposing "no sentence [for gross sexual mis-

conduct] as long as rape conviction remains valid." That judgment cannot stand. The harms inflicted by multiple convictions are not precisely coextensive with the harms inflicted by cumulative punishments, and the Constitution provides separate protections against both forms of double jeopardy. *See generally Ohio v. Johnson,* 467 U.S. 493, 497–99, 104 S.Ct. 2536, 2540–41, 81 L.Ed.2d 425 (1984). Redundant convictions are not made constitutional merely by running the sentences concurrently. *State v. Allen,* 292 A.2d 167, 172 (Me.1972); *see also Commonwealth v. Jones,* 382 Mass. 387, 395–96, 416 N.E.2d 502, 507–08 (1981) (discussing the harms inflicted by multiple convictions even in the absence of cumulative sentences). Nor is the open-ended gross sexual misconduct judgment in the case at bar any less prejudicial to Walsh because of the indeterminacy of the sentence.

■ Accordingly, we vacate the judgment of conviction on the gross sexual misconduct count. Because the presiding justice imposed the rape sentence with full awareness of all the relevant circumstances surrounding the double verdicts, including the constitutional bar against a separate sentence for gross sexual misconduct, there is no interrelationship of the sort we found in *State v. Thornton,* 540 A.2d at 777, and in *State v. Poulin,* 538 A.2d at 279, requiring resentencing on the rape count.

■ Presented again with guilty verdicts returned on both rape and Class A gross sexual misconduct counts based on evidence of only a single act of sexual intercourse, the Superior Court should enter judgment on only one of the counts.[2] If the court concludes the evidence is adequate to support either verdict, it appropri-

---

A. The other person submits as a result of compulsion, as defined in section 251, subsection 1, paragraph E; or
B. The other person, not his spouse, has not in fact attained his 14th birthday....
17-A M.R.S.A. §§ 252–253 (Supp.1988). The language of the statute under which Walsh was convicted differs in ways not here relevant. Other variants of gross sexual misconduct, con-

stituting lesser offenses with no parallel in the rape statute, are defined in *id.* § 253(2).

2. In contrast to *State v. Allard,* 557 A.2d 960 (Me.1989), involving double guilty verdicts for the single crime of manslaughter, it is impossible to enter a single judgment on both the rape and the gross sexual misconduct counts.

ately may give the State an election of which count to take to judgment.

## II.

Walsh further argues that his convictions for rape and terrorizing must be set aside on the ground that prosecutorial action deprived him of a fair trial. Specifically, he contends that the prosecutor impermissibly asserted her personal opinion in her opening statement, that she indulged in prejudicial rhetorical excesses in closing argument, and that she engaged in improper cross-examination of defendant. Because none of these claims of error was preserved at trial, we review the record only for obvious error. *See* M.R.Crim.P. 52(b). The convictions must stand unless "the obviousness of the error and the seriousness of the injustice done to the defendant thereby are so great the Law Court cannot in good conscience let the conviction stand." *State v. True*, 438 A.2d 460, 469 (Me.1981). Although there was error in the case at bar, Walsh has not shown that it was so obvious and the injustice so serious as to destroy the fundamental fairness of the jury trial resulting in his conviction.

■ In the State's opening, the prosecutor told the jury that the victim

> will tell you who raped her and it's up to you to decide whether she has the right person. I believe beyond a reasonable doubt she has the right person.

This statement conflicts with the unequivocal provision of Maine Bar Rule 3.7(e)(2)(v) requiring that "a lawyer shall not ... [a]ssert his personal opinion ... as to the guilt or innocence of an accused." *See State v. Diaz*, 556 A.2d 1098, 1099 (Me. 1989). Whether this impropriety is the sort of blunder for which the criminal must go free, however, is a different question. The principal dangers to a fair trial posed by a prosecutor's expression of opinion are that the jury may be reluctant to bring in a verdict they are led to perceive as challenging the prosecutor's personal credibility, and that the jury may regard the prosecutor's confidence as being based on a superior familiarity with the facts of the case, including facts not in evidence. *See United-*

*ed States v. Cresta*, 825 F.2d 538, 555–56 (1st Cir.1987) (finding harmless error in more extensive personal opinions of prosecutor about evidence).

Jurors, however, are aware that the role of a prosecutor is to argue for guilt, and might just as well read nothing more into "I believe" than they have already read into the decision to prosecute. The presiding justice carefully instructed them that they "are to consider only the evidence in this case" and that they "as jurors are the sole judges of whether to believe the witnesses." Whatever additional value a specifically focused curative instruction might have had, it was for Walsh to request such an instruction. In considering the fairness of the trial in the context of the record as a whole, we find it unlikely that the jury, after hearing all the testimony and being properly instructed by the court, was in the end swayed by an isolated sentence in the opening statement, a sentence that at the time did not make enough of an impression on the defense to provoke an objection. *See State v. Colomy*, 407 A.2d 1115, 1118–19 (Me.1979) (finding no prejudice resulting from "repeated use of the expression 'we know' in place of 'the State will attempt to prove' ").

■ Another allegation of prosecutorial misconduct that gives us some concern arises from the cross-examination of Walsh concerning the sexually transmitted disease chlamydia. Because the evidence showed that the victim contracted that disease at or near the time of the rape, the jury could rationally infer that the rapist, whoever he was, gave it to her. Thus, whether Walsh had chlamydia was highly relevant.

After Walsh denied that he had ever been treated for chlamydia or had been given any antibiotics while in jail, the State's cross-examination proceeded:

Q  Would it surprise you to know that your wife in fact has chlamydia?

A  I didn't know.

. . . .

Q  Would it surprise you to know that [a named officer] has prescribed for you

or has given you antibiotics while you were over in the jail?

A  He has given me antibiotics?

Q  Um-hum.

A  No he hasn't.

Maine Bar Rule 3.7(e)(2)(ii) prohibits "[s]tat[ing] or allud[ing] to any matter that ... will not be supported by admissible evidence." As the defense emphasized in closing argument, the State never introduced any evidence whatsoever in support of the "facts" that Walsh's wife has chlamydia and that Walsh was given antibiotics. On the record before us, we are left in the dark with regard to the factual basis for the State's line of questioning. There may have been a basis, but the record does not disclose it. No defense objection was made to the State's cross-examination and neither side called any of the witnesses who could have shed more light on the prosecutor's assertions or introduced any relevant medical records. As a result, at the conclusion of the trial the jury was left with a record that alerted the jury both to the high probability that the rapist (whoever he was) had chlamydia and to the utter lack of proof that Walsh had chlamydia. This state of the evidence worked in Walsh's favor and his counsel in closing argument took full advantage of it, and he at no time made any objection to the State's cross-examination. While we do not by any means endorse the State's style of cross-examination, we do not find in the circumstances of this case that it deprived Walsh of a fundamentally fair trial.

■  The prosecutor's other allegedly improper remarks, to the extent they may have been erroneous, plainly caused no unfair prejudice to defendant. The factual comments were "within the bounds of fairness," and any inaccuracy was of the kind appropriately corrected not by appellate review but by closing argument, a course the defense did in fact follow. *See State v. Doughty,* 554 A.2d 1189, 1192 (Me.1989). Because nothing in the prosecutor's conduct at trial constituted obvious error, we affirm the rape and terrorizing convictions.

## III.

■  Finally, Walsh contends that the consecutive sentences for rape and for ter-

rorizing with a dangerous weapon are unlawful because both convictions result from a single incident. He likens the case at bar to *State v. Bunker,* 436 A.2d 413, 417–19 (Me.1981), in which we vacated consecutive sentences for rape and kidnapping. We found the consecutive sentences in *Bunker* improper, however, on the basis of 17–A M.R.S.A. § 1256(3)(B) (1983), which prohibits consecutive sentences "for crimes arising out of the same criminal episode when ... [o]ne crime consists only of a conspiracy, attempt, solicitation or other form of preparation to commit, or facilitation of, the other." *See also State v. Prentiss,* 557 A.2d 619, 621 (Me.1989). Walsh's armed terrorization of the victim by no means "consist[ed] only of a ... facilitation" of the rape. *See State v. Winchenbach,* 501 A.2d 1282, 1287 (Me.1985). In fact, the only acts of terrorizing charged in the indictment were threats made against the victim after the rape had been committed.

In the present circumstances the prohibition on consecutive sentences under section 1256(3) does not come into play. Rather, the applicable restriction on consecutive sentences is section 1256(2), which creates a presumption in favor of concurrent sentences but gives the court discretion to impose consecutive sentences if they are warranted in light of any of four enumerated factors. The court did not abuse its discretion. The sentencing justice stated his reasons for consecutive sentences on the record, and his findings, amply supported by the evidence, justify consecutive sentences either under subparagraph A, authorizing consecutive sentences for offenses based on different conduct, or under subparagraph D, authorizing consecutive sentences when the criminal conduct is unusually serious.

The entry is: Judgments on Counts I (rape) and III (terrorizing) affirmed. Judgment on Count II (gross sexual misconduct) vacated.

All concurring.