**STATE of Maine**

v.

**Richard MORRISON.**

Supreme Judicial Court of Maine.

Argued Nov. 15, 1989.
Decided Jan. 4, 1990.

David W. Crook, Dist. Atty., Alan P. Kelley, Deputy Dist. Atty. Pamela J. Ames (orally), Asst. Dist. Atty., Augusta, for the State.

Peter B. Bickerman (orally), Lipman & Katz, P.A., Augusta, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, and HORNBY, JJ.

McKUSICK, Chief Justice.

In his Superior Court (Kennebec County, *Alexander J.*) jury trial on charges of rape, gross sexual misconduct, unlawful sexual contact, and assault,[1] Richard Morrison, a former Maine State Police trooper, represented himself until after the jury returned a guilty verdict on all counts. Soon thereafter, and before sentencing, Morrison through retained counsel moved for a new trial, contending that he had not made a knowing and intelligent waiver of his federal and state constitutional right to counsel. After a testimonial hearing on March 10 and May 1, 1989, the court denied his motion, entered judgment on the jury verdict, and imposed sentence. Morrison appeals, again relying principally on his defective-waiver-of-counsel argument. We also reject that argument.

I.

■ Morrison had appeared *pro se* both at his arraignment and later at the docket call preceding trial, and on both occasions in colloquy with the court (*Brody, C.J.*) he expressly declared his desire to represent himself at trial without an attorney. The implicit finding of fact made by both the justice presiding in pretrial matters and by the justice at trial, that Morrison's waiver of counsel and election to represent himself were knowing and intelligent, was made explicit in the trial justice's opinion denying Morrison's motion for a new trial. To prevail on appeal, Morrison must persuade us that the Superior Court justices' factual finding of knowing and intelligent waiver was clearly erroneous.[2] We are not so persuaded.

"Whether an accused has properly waived his right to counsel must be determined by the trial court based on the particular facts and circumstances of each case." *State v. Walls*, 501 A.2d 803, 805 (Me.1985) (citations omitted). As established long ago by *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938):

> The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

We review "the record in the light most favorable to the court's ruling to determine whether the record will support a finding of a knowing and intelligent waiver." *State v. Walls*, 501 A.2d at 805. Here the question is, then, whether Morrison at the critical times in fact knowingly and intelligently chose to represent himself; whether Morrison "[knew] what he [was] doing and his choice [was] made with eyes open." *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975) (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)).

---

1. Morrison was tried on two counts of rape (17–A M.R.S.A. § 252 (1983)); two counts of gross sexual misconduct (17–A M.R.S.A. § 253 (Supp.1989)); two counts of unlawful sexual contact (17–A M.R.S.A. § 255 (Supp.1989)); and one count of assault (17–A M.R.S.A. § 207 (1983 and Supp.1989)). The jury returned a guilty verdict on all seven counts. Since each of the two counts of gross sexual misconduct factually involved the same sexual activity as a corresponding rape count, the Superior Court entered a judgment of conviction on the rape counts and dismissed the gross sexual miscon-

duct counts, with the dismissal to take effect when the judgments on the rape counts became final. *See State v. Walsh*, 558 A.2d 1184, 1186–87 (Me.1989). Since we make the rape convictions final by affirming them, the Superior Court's dismissal of the gross sexual misconduct counts takes effect upon the issuance of our mandate.

2. In *State v. Tomah*, 560 A.2d 575, 576 (Me. 1989), we misspoke of reviewing the trial court's finding of waiver for abuse of discretion.

Normally the record on a direct appeal is not adequate for us to review a defendant's claim that his waiver of counsel was defective. As we recognized in *State v. Walls*, post-conviction review is "a proceeding more conducive to the development of evidence that is more sharply focused" on "the particular facts and circumstances surrounding that case," including the background, experience, and conduct of the accused, 501 A.2d at 805–06, all of which are made determinative by *Johnson v. Zerbst*, 304 U.S. at 464, 58 S.Ct. at 1023. In the case at bar, however, the record on direct appeal is adequate for our review. The presentence proceedings on Morrison's motion for a new trial were the functional equivalent of post-conviction proceedings in that both Morrison and the State had an unrestricted opportunity to develop all the evidence "sharply focused" on the particular facts and circumstances of Morrison's waiver of counsel at his just-completed trial.

 After hearing the evidence on Morrison's motion for a new trial, the trial court affirmatively found that:

> The defendant was knowledgeable of his right to counsel, and having considered the risks or at least having been made aware of the risks, chose to represent himself.... In the context of this case, with the advice provided to the defendant by family and friends, the court has no question that the defendant reached a knowing and intelligent decision to represent himself in this matter.

A plenitude of evidence supports this factual finding. During his years in law enforcement Morrison had had court experience in helping the prosecution in at least two felony cases and many lesser cases. After his indictment he was repeatedly urged to engage counsel by his wife, by fellow members of the Maine State Police, and by other friends. For example, one of Morrison's best friends in the State Police, himself knowledgeable in criminal matters from his law enforcement career, spent 45 minutes to an hour on the telephone with Morrison trying to persuade him to hire a lawyer or at least to consult one. Morri-

son's wife went further and contacted a lawyer, the lawyer who eventually represented Morrison at the motion for new trial and in this appeal, only to have Morrison become angry with her and refuse the lawyer's help.

In the month before trial Morrison met several times with the District Attorney, who, as the trial justice found, repeatedly advised Morrison "of the risks of self-representation, the fact that he would be opposed by skilled counsel and the importance of having skilled counsel to assist him." In the packet of discovery materials turned over by the District Attorney, Morrison received a copy of the sentencing rules that the District Attorney understood from experience that the trial justice generally followed, and so Morrison was made aware in very concrete terms of the substantial sentence he was facing. Although none of these persons thus involved with Morrison had any legal responsibility to warn him of the risks he assumed by proceeding *pro se*, the fact that they did give him these repeated warnings confirms as a fact that he made the choice to go it alone "know[ing] what he was doing and ... with [his] eyes open." The trial justice specifically found that Morrison "present[ed] himself in court and otherwise as a bright, self-confident, polite and knowledgeable individual." He did not refuse counsel for financial reasons. Morrison had a strongly held dislike of attorneys, and despite repeated warnings he never budged from his early decision to conduct his own defense at trial.

The question here is not whether in hindsight it appears that Morrison acted in his own best interest or made an objectively wise decision to represent himself. The record reflects that he made an informed decision to proceed *pro se*—as is his constitutional right—in what he believed at that time to be his own best interest. The Superior Court made no clear error in finding a knowing and intelligent waiver of counsel.

 Once we uphold the Superior Court's finding that Morrison in fact waived counsel knowingly and intelligently, nothing is left to his waiver of counsel

issue on this appeal. We refuse to create any kind of prophylactic rule by which the conviction of any *pro se* defendant would be automatically vacated, regardless of the particular facts and circumstances surrounding that defendant's waiver of counsel, if the trial court failed to give the defendant *Miranda*-like warnings of the risks of self-representation and the benefits of counsel on the record. Neither Supreme Court case law nor our own lays out any such prophylactic rule. If our recent opinion in *State v. Tomah*, 560 A.2d 575 (Me. 1989), can be read to that effect, we take this opportunity to disavow that reading.

## II.

Count 6 of the indictment charged Morrison with unlawful sexual contact with the then 13–year–old victim during the summer of 1985. The State concedes that the record contains only evidence of a "sexual act" during the summer of 1985 and no evidence of "sexual contact" within the definition of 17–A M.R.S.A. § 251(D) (Supp. 1989).[3] Morrison therefore must be acquitted on Count 6 because although the record supports the rape conviction during that summer, the evidence does not sustain the jury verdict of unlawful sexual contact. *See State v. Walker*, 512 A.2d 354, 356 (Me.1986) ("sexual act" distinguished from "sexual contact").

## III.

We find no merit in any of defendant's other contentions on appeal. Since Morrison did not object at trial to any of the alleged errors, we must apply an "obvious error" standard of review. *See State v. True*, 438 A.2d 460, 467–69 (Me.1981). When we do, we find in each instance that if any error at all exists, it is not one that "is so highly prejudicial and so taints the proceeding as virtually to deprive [defendant] of a fair trial." *Id.* at 468 (quoting

*State v. Langley*, 242 A.2d 688, 690 (Me. 1968)).

■ Literally read, the record suggests that the trial court may have instructed Morrison that he could put on character witnesses to testify as to his reputation for truthfulness only if *the court* called his truthfulness into question. Despite any such misstatement, however, Morrison testified at the new trial hearing that he felt free to present character witnesses if the State had attacked his credibility. Furthermore, since the State in fact at trial never raised such an attack, "evidence in support of the defendant's reputation for truth and veracity [was] not admissible." *State v. Wells*, 423 A.2d 221, 226 (Me.1980); M.R. Evid. 608.

■ Contrary to Morrison's further contentions, we find no "prosecutorial misconduct" that approaches the standard of obvious error. In denying the motion for new trial the trial court found that the District Attorney had committed no discovery violations, and that factual finding is fully supported by the record. *See Harmon v. Emerson*, 425 A.2d 978, 981 (Me. 1981). It also appears from the record that Morrison did not rely on the District Attorney's advice as to the admissibility of a character witness on veracity, since Morrison ignored that advice and in any event subpoenaed the witness to testify. Any deterrence of Morrison's use of the defense of a normal adult sex life—even assuming he contemplated using it—would relate only to a collateral issue that would not have affected the outcome of the case. And both pieces of allegedly inadmissible evidence adduced by the State had at least marginal relevance to the case and in any event were not so prejudicial as to work any manifest injustice. Finally, neither in his opening statement nor in his closing argument did the prosecutor make any comment that in context was improper.

---

**3.** 17–A M.R.S.A. § 251 (Supp.1989) establishes the following definitions in pertinent part:

**C.** "Sexual act" means:

(1) Any act between 2 persons involving direct physical contact between the genitals of one and ... the genitals of the other; ...

**D.** "Sexual contact" means any touching of the genitals ... other than as would constitute a sexual act....

*See State v. Walsh,* 558 A.2d 1184, 1188 (Me.1989).

The entry is:

Judgment on Count 6 vacated; remanded for entry of judgment of acquittal. Judgments on the other counts affirmed.

ROBERTS, CLIFFORD and HORNBY, JJ., concur.

WATHEN, Justice, with whom GLASSMAN, Justice, joins dissenting.

I must respectfully dissent. The Court has conveniently and erroneously transferred the duty to acquaint the defendant with the dangers of self-representation from the presiding justice to the family and friends of the defendant. Even if such a radical proposition correctly stated constitutional doctrine, the generalized warnings delivered by the family and friends in this case fall far short of adequately acquainting the defendant with the actual perils of self-representation. Moreover, the record before us presents a classic illustration of the prejudice that results from self-representation.

A criminal defendant has both a federal and state constitutional right to represent himself at trial. U.S. Const. amend. VI; Me. Const. art. I, § 6. When a defendant elects to exercise the right of self-representation, however, the court is required to determine that he has knowingly and intelligently waived the benefits associated with the right to counsel.

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."

*Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975) (citations and quotations omitted). The United States Supreme Court has adopted a pragmatic approach to the waiver question. The type of warnings and procedures required at any stage of a criminal proceeding depends upon the purposes a lawyer can serve and the assistance he could provide at that particular stage.

> At one end of the spectrum, we have concluded there is no Sixth Amendment right to counsel whatsoever at a postindictment photographic display identification, because this procedure is not one at which the accused "require[s] aid in coping with legal problems or assistance in meeting his adversary." *See United States v. Ash,* 413 U.S. 300, 313–320 [93 S.Ct. 2568, 2575–2579, 37 L.Ed.2d 619] (1973). At the other extreme, recognizing the enormous importance and role that an attorney plays at a criminal trial, we have imposed the most rigorous restrictions on the information that must be conveyed to a defendant, and the procedures that must be observed, before permitting him [to] waive his right to counsel at trial. *See Faretta v. California,* 422 U.S. 806, 835–836 [95 S.Ct. 2525, 2541, 45 L.Ed.2d 562] (1975); *cf. Von Moltke v. Gillies,* 332 U.S. 708, 723–724 [68 S.Ct. 316, 323, 92 L.Ed. 309] (1948). In these extreme cases, and in others that fall between these two poles, we have defined the scope of the right to counsel by a pragmatic assessment of the usefulness of counsel to the accused at the particular proceeding, and the dangers to the accused of proceeding without counsel. An accused's waiver of his right to counsel is "knowing" when he is made aware of these basic facts.

*Patterson v. Illinois,* 487 U.S. 285, ——, 108 S.Ct. 2389, 2398, 101 L.Ed.2d 261 (1988).

Until today, this Court has held that a defendant must be acquainted with the dangers of self-representation prior to trial and the record must reflect that his choice was made with knowledge of the consequences. *State v. Tomah,* 560 A.2d 575 (Me.1989); *State v. Walls,* 501 A.2d 803, 805 (Me.1985). When, as in this case, the

trial court allows a defendant to represent himself without an express finding of waiver, we review the record "in the light most favorable to the court's ruling to determine whether the record will support a finding of a knowing and intelligent waiver." *Id.*

At arraignment, the entire discussion between the accused and the presiding justice (*Brody, C.J.*) regarding representation was as follows:

THE COURT: Mr. Morrison, do you have a lawyer?

THE DEFENDANT: No, sir.

THE COURT: Do you need some time to get one?

THE DEFENDANT: No, sir.

THE COURT: You're going to represent yourself?

THEW DEFENDANT: Yes, sir.

THE COURT: I take it that's your own choice and you're not asking to appear pro se because of any financial problems?

THE DEFENDANT: Yes, sir.

At a subsequent call of the criminal docket the following colloquy occured:

THE COURT: Do you have counsel?

THE DEFENDANT: No, sir.

THE COURT: Have you requested counsel?

THE DEFENDANT: No, sir.

THE COURT: Do you want to try this case yourself?

THE DEFENDANT: Yes, sir.

THE COURT: You understand you have a constitutional right to have counsel appointed for you if you can't afford one?

THE DEFENDANT: Yes, sir.

THE COURT: And you want to try the case yourself, that's your selection?

THE DEFENDANT: Yes, sir.

"[W]aiver is dependent on the facts and circumstances of each case, [and] it is not possible to specify the elements of an adequate basis for a finding of waiver." *Tomah*, 560 A.2d at 576. Despite the fact that the trial justice informed the defendant of his constitutional right to an attorney and determined that his choice of self-representation was not the result of indigency, there is no basis in the record to find that defendant's choice was made with knowledge and appreciation of the dangers of self-representation. *See Tomah*, 560 A.2d at 576; *State v. Gaudette*, 431 A.2d 31, 32 (Me.1981). Moreover, there is absolutely no basis for the conclusion that the rigorous standards and procedures imposed by the federal constitution have been met. *See Patterson v. Illinois*, 487 U.S. at ——, 108 S.Ct. at 2397–2398.

The Court concludes that the evidentiary record created at the hearing on the motion for a new trial supports the adequacy of the waiver. I disagree. It is the trial court's responsibility to advise the accused as to the dangers of self-representation and ensure, before he encounters trial, that defendant's choice is made with his eyes open. The fact that defendant was advised by family and friends to get a lawyer before trial does not enhance the evidentiary basis for the earlier ruling of the justice presiding at the arraignment and call of the docket. The ruling on waiver must be based on information reflected in the record. *Tomah*, 560 A.2d at 576 n. 1. The record before us does not support the finding that defendant knowingly and intelligently waived his right to counsel.

Even if we look at the warnings delivered by family and friends, they consist of nothing more than the general warning that he should be represented. Defendant was never informed by anyone that by waiving counsel he was giving up the right to challenge the adequacy of his representation after a conviction. He was not informed of the difficulties he encountered in attempting to testify in narrative form and in attempting to cross-examine the victim. Defendant was not warned of the disadvantages he would suffer in attempting to deal with the district attorney. In fact, he was called for a plea bargaining session and was wrongfully persuaded by the district attorney that if he presented witnesses to testify to his good character, the State would be able to introduce highly prejudicial and embarassing evidence of an unrelated sexual relationship. Despite the

Court's strained analysis the fact remains that defendant presented no character evidence.

I would vacate the judgment. Because the dangers of self-representation are so apparent and yet so easily forgotten, we must protect the right to counsel with more rigorous procedures than those employed in this case.