SILVER, J.
[¶ 1] Seth J. Hill appeals from a judgment of conviction of criminal OUI (Class D), 29-A M.R.S. § 2411(1-A)(C)(1) (2013) and refusing to sign a uniform summons and complaint (Class E), 29-A M.R.S. § 2601(10) (2018), entered in the trial court ('Wheeler; J.) following a jury trial. Hill argues that the trial court erred in concluding that he voluntarily, knowingly, and intelligently waived his constitutional right to be assisted by counsel at trial, and in admitting in evidence Hill’s booking photograph and testimony regarding administration of “non-standard” field sobriety tests. We focus on Hill’s claim that he did not properly waive his right to counsel. Because we conclude that Hill did not voluntarily, knowingly, and intelligently waive his constitutional right to counsel, we must vacate the judgment.
I. BACKGROUND
[¶ 2] On September 12, 2011, Hill was charged with criminal OUI and refusing to sign a uniform summons and complaint. *631 At his arraignment on September 20, 2011, Hill moved for appointment of counsel. The court appointed counsel to represent Hill on September 22, 2011, and, at Hill’s request, the case was transferred to the Superior Court and set for a jury trial.
[¶ 8] At a docket call on December 6, 2011, Hill’s counsel moved to withdraw, indicating that Hill had asked that counsel “recuse” himself from the case and that Hill intended to proceed pro se. After telling counsel, “I will allow you to withdraw,” the court (Murphy, J.) appropriately asked Hill whether he wanted the court to appoint a different attorney, informed Hill of his right to the representation of counsel at the State’s expense, and noted that the OUI charge carried a mandatory minimum jail sentence. Hill maintained that he wished to represent himself, and that he had enough time to come to that decision. The court asked Hill whether he had been charged with anything in the past, to which Hill replied, “I don’t think to this severity.” When asked whether he understood “how a trial works,” Hill replied, “Well, yeah, but not — not exactly, you know.” The court reiterated that it had “an obligation to provide an attorney if [Hill] want[ed] one,” but Hill again indicated that he wished to represent himself. The court then stated that Hill’s attorney was “relieved of [his] obligation.” Immediately following that statement, Hill’s now-former counsel added: “[I]f it puts your mind at ease, Your Honor, we have discussed this. Mr. Hill is highly intelligent ... and I believe he knows — he’s making a knowledgeable and informed decision. It may not be the decision I would recommend, but he knows what he’s doing.”
[¶ 4] On March 8, 2012, the court (Mills, J.) conducted jury selection with Hill present and participating without counsel. On March 28, 2012, the court (Wheeler, J.) held a jury trial at which Hill represented himself. The record contains no evidence that Hill’s decision to represent himself was addressed either during jury selection or at the start of trial. The jury found Hill guilty on both counts, and the court sentenced Hill to ninety-six hours in the county jail, suspended his license to operate a motor vehicle for ninety days, imposed a $600 fine on the OUI charge, and imposed a $100 fíne for refusing to sign a uniform summons and complaint. The court suspended the execution of Hill’s sentence pending this timely appeal.
II. DISCUSSION
[¶ 5] The Sixth Amendment guarantees criminal defendants the right to counsel at “critical stages” of the criminal process. State v. Watson, 2006 ME 80, ¶ 17, 900 A.2d 702 (quotation marks omitted); see also U.S. Const. amend. VI; Me. Const. art. I, § 6.[1] As we have recognized, however, “[c]onstitutional rights, including the right to counsel, may be waived as long as the waiver is voluntary, knowing, and intelligent.” Watson, 2006 ME 80, ¶ 15, 900 A.2d 702. “[Because it is a fundamental constitutional right, the right to representation by counsel requires that every reasonable presumption must be indulged against waiver.” Id. “[W]hen considering challenges to a trial court’s determination that a criminal defendant effectively waived the right to representation by counsel,” we “apply a bifurcated standard of review, reviewing any express or implicit factual findings for clear error, and the legal conclusion to be drawn from those facts de novo.” Id. ¶¶ 29, 81.
*632 [¶ 6] In determining whether a defendant’s waiver of the right to counsel was voluntary, knowing, and intelligent, courts consider “whether the defendant was informed of the right to counsel by the court, as well as the totality of relevant circumstances including the background, experience, and conduct of the accused.” Id. ¶ 17 (quotation marks omitted). At the trial stage, specific warnings are required because “counsel is required to help even the most gifted layman follow the procedural and technical requirements of the trial process.” Id. ¶ 18 (quotation marks omitted).
[¶7] Like the United States Supreme Court, we have declined to adopt standardized, “Miranda-like warnings of the risks of self-representation and the benefits of counsel.” Id. ¶ 22 (quotation marks omitted). We have, however, identified three elements that the trial court should address with the defendant on the record in some fashion:
(1) the right to be represented by a lawyer at trial and the right to be considered for a court-appointed lawyer if the defendant cannot afford to hire a lawyer; (2) that the defendant will be held to the same standards as a lawyer and the trial court will not aid the defendant in his defense; and (3) that it is risky for persons untrained in the law to represent themselves because, unlike lawyers, they are not trained to identify possible defenses, follow the rules of procedure and the rules of evidence, or conduct a trial, including selecting a jury, questioning witnesses, admitting and objecting to evidence, and arguing the case.
Id. ¶ 23. “The level of detail of the information provided by the court may be calibrated to the defendant’s individual circumstances.” Id. We have emphasized that a defendant “should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.” Id. ¶ 24 (quoting Faretta v. California, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)).[2]
[¶ 8] Although we consider the totality of the relevant circumstances, our review of a court’s acceptance of a defendant’s waiver of counsel ordinarily begins and ends with the record of the court’s colloquy. In the absence of warnings or information from the court, the surrounding circumstances will establish a valid waiver only in “exceptional” cases. Id. ¶ 25; see also United States v. Forrester, 512 F.3d 500, 506-07 (9th Cir.2008) (stating that, “[ojrdinarily, only the defendant’s colloquy with the court at the Far-etta hearing is relevant to the waiver analysis,” but recognizing a “limited exception” where “the record as a whole reveals a knowing and intelligent waiver” (quotation marks omitted)). In such exceptional cases, the record must reflect “that the defendant was aware of the existence of technical rules and that presenting a defense is not just a matter of telling one’s story.” Watson, 2006 ME 80, ¶ 25, 900 A.2d 702 (quotation marks omitted); see also United States v. Mohawk, 20 F.3d 1480, 1484-85 (9th Cir.1994) (concluding that a defendant’s waiver was invalid where the record did not reflect that the court administered warnings or that the defendant had “any legal training, *633 specialized education, or unusual background” indicating that “he truly understood the implications of his decision to represent himself’ (quotation marks omitted)). The ultimate quality of a defendant’s self-representation at trial is not dispositive, and, as here, often not helpful in determining whether the totality of the circumstances establishes that a defendant’s waiver of counsel was voluntary, knowing, and intelligent. See Mohawk, 20 F.3d at 1485 (“The manner in which a defendant conducts his defense cannot establish his state of mind at the time he opted for self-representation.” (quotation marks omitted)).
[¶ 9] In Watson, we addressed challenges to the validity of waivers of counsel in two cases consolidated for purposes of briefing and argument. 2006 ME 80, ¶¶ 1-2, 900 A.2d 702. In one case, State v. Watson, the defendant was not directly warned of the dangers of self-representation. Id. ¶ 32. Nevertheless, because the defendant demonstrated an understanding of his right to counsel and the charges against him and received a detailed explanation of the trial process from the trial court, we concluded that his waiver was voluntary, knowing, and intelligent. Id. ¶¶ 32-33. In the companion case, State v. Blumberg, however, we concluded that the defendant did not knowingly and intelligently waive his right to counsel and therefore vacated his conviction because there was “simply no basis to conclude from the trial record” that the defendant had been warned of “the pitfalls of proceeding to trial without counsel.” Id. ¶¶ 34-36 (quotation marks omitted).[3]
[¶ 10] Here, none of the trial judges who presided over the docket call, jury selection, and trial expressly determined that Hill had voluntarily, knowingly, and intelligently waived his right to counsel. The record reflects that Hill was aware of his right to counsel. He had been represented by court-appointed counsel and, in addition, the docket call justice told him that he had a right to court-appointed counsel. Thus, the first Watson element was satisfied. See id. ¶ 23. No evidence in the record demonstrates, however, that Hill was informed prior to the *634 commencement of trial as to the second element — that he would be held to the same standards as a lawyer and that the trial court would not aid him in his defense — or the third element — that it would be unwise for him to represent himself because he would be expected to follow the same procedural and evidentiary rules as a trained attorney. See id. Neither the Constitution nor our precedents require specific words from the court, but both require that the Watson elements be explained to criminal defendants. See id. ¶¶ 22-23.
[¶ 11] We cannot infer from this record that Hill had such basic knowledge or was prepared to proceed without that knowledge, particularly because Hill’s response to the court’s question of whether Hill understood “how a trial works” was “Well, yeah, but not — not exactly, you know.” (Emphasis added.) When the court inquired about Hill’s familiarity with the justice system, Hill indicated that he had never been charged with anything of the same “severity” as the charges at issue — a Class D and Class E offense. Although the attorney who had, until seconds before, acted as Hill’s counsel volunteered that he had “discussed this” with Hill, and that he was confident that Hill was “highly intelligent” and “making a knowledgeable and informed decision,” the record is not sufficient to allow us to infer that former counsel’s conversation with Hill included a discussion of the elements we emphasized in Watson. In addition, it is important to note that counsel had already been relieved of representation of Hill at Hill’s request. The record does not reflect what caused the breakdown in the attorney-client relationship. Counsel was speaking for Hill at a time when he no longer represented him. The waiver of a criminal defendant’s fundamental constitutional right to counsel must be clear on the record. See id. ¶¶ 23-25.
[¶ 12] “The denial of the right to counsel is a structural error for which harm is presumed because it casts such doubt on the fairness of the trial process ... that it can never be considered harmless error.” Id. 1136 (quotation marks omitted). Hill’s own responses to the court indicated that he did not understand the trial process. Counsel’s statements regarding Hill’s waiver were insufficient to show a voluntary, knowing, and intelligent waiver. In addition, counsel spoke on Hill’s behalf after he had been discharged. Because the record does not reflect — and we cannot infer — that Hill knew of the pitfalls of proceeding to trial without counsel, we must vacate Hill’s conviction and remand for a new trial. Accordingly, we do not reach the other issues Hill raises on appeal.[4]
*635 The entry is:
Judgment vacated. Remanded for further proceedings consistent with this opinion.

. The right to counsel afforded by the Maine Constitution is coextensive with that of the Sixth Amendment. State v. Watson, 2006 ME 80, ¶ 14, 900 A.2d 702.

. Such warnings are sometimes referred to as "Faretta warning[s]” or a "Faretta inquiry” after the United States Supreme Court's decision in Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). See, e.g., United States v. Francois, 715 F.3d 21, 30 n.3 (1st Cir.2013) (quotation marks omitted).

. The dissenting opinion takes issue with our reliance in Watson on our earlier decision in State v. Tomah, 560 A.2d 575 (Me. 1989), because we had "disavowed” portions of Tomah in State v. Morrison, 567 A.2d 1350, 1353 (Me. 1990). Dissenting Opinion ¶¶ 34, 35 n.7. Contrary to the dissent’s representations, Morrison did not disavow any part of Tomah; rather it disavowed a reading of Tomah that would require prophylactic, Miranda-like warnings in order for a waiver of counsel to be effective:
We refuse to create any kind of prophylactic rule by which the conviction of any pro se defendant would be automatically vacated, regardless of the particular facts and circumstances surrounding that defendant’s waiver of counsel, if the trial court failed to give the defendant Miranda-like warnings of the risks of self-representation and the benefits of counsel on the record. Neither Supreme Court case law nor our own lays out any such prophylactic rule. If our recent opinion in State v. Tomah can be read to that effect, we take this opportunity to disavow that reading.
Morrison, 567 A.2d at 1353 (citation omitted). Watson — in which the dissenting justice in this case was part of the majority — relied on Tomah because Tomah, like Watson and Morrison, concluded that Miranda-like warnings are not required:
Because waiver is dependent on the facts and circumstances of each case, it is not possible to specify the elements of an adequate basis for a finding of waiver. We have no trouble, however, in concluding that the present record is woefully inadequate to support the finding.
Tomah, 560 A.2d at 576; see also Watson, 2006 ME 80, ¶¶ 21-22, 900 A.2d 702 (discussing Tomah and stating that “we ... declineQ to adopt fixed ‘Miranda-like warnings of the risks of self-representation and the benefits of counsel’_” (quoting Morrison, 567 A.2d at 1353)).

. We are puzzled by the dissent’s reference to State v. Wiley, 2013 ME 30, 61 A.3d 750, because our holding in Wiley, and the dissent's disagreement with it, are completely irrelevant to this case. Regardless, the dissenting opinion mischaracterizes our holding in Wiley, stating among other things that it "abandoned our own past practice and precedent, and ignored current federal precedent.” Dissenting Opinion ¶ 43. In Wiley, we applied long-standing Maine precedent that requires proof beyond a reasonable doubt to establish the voluntariness of a confession for purposes of article I, section 6 of the Maine Constitution, and not the less demanding standard of proof by a preponderance of the evidence applied by the federal courts for purposes of the Fourteenth Amendment of the Federal Constitution. 2013 ME 30, ¶ 15, 61 A.3d 750 ("A confession is admissible in evidence only if it was given voluntarily, and the State has the burden to prove voluntariness beyond a reasonable doubt.” (citing State v. McCarthy, 2003 ME 40, ¶ 12, 819 A.2d 335)); see also State v. Rees, 2000 ME 55, ¶ 9, 748 A.2d 976 ("Although we may look to the construction of federal constitutional provisions in U.S. Supreme Court cases and apply the same construction as far as possible, we are *635 not confined to that construction when ... a more protective standard is warranted under Maine law.”); State v. Collins, 297 A.2d 620, 625-27 (Me. 1972) (holding that the State must prove the voluntariness of a confession beyond a reasonable doubt despite federal precedent requiring only proof by a preponderance of the evidence).