ALEXANDER, J.,
dissenting.
[¶ 18] I respectfully dissent. Prior to waiver of counsel, the defendant consulted *636 with counsel. His counsel subsequently advised the court that the defendant was “highly intelligent” and “making a knowledgeable and informed decision” to proceed without counsel. After being advised of his right to counsel by the court, the defendant freely elected to proceed without counsel and now seeks to reverse his course, the result not being to his liking. The Court appropriately cites the Sixth Amendment of the United States Constitution as establishing the right to counsel at issue in this appeal. It then observes that “[t]he right to counsel afforded by the Maine Constitution is coextensive with that of the Sixth Amendment.” Court’s Opinion ¶ 5 n.1. This statement cites our past precedent, State v. Watson, 2006 ME 80, ¶ 14, 900 A.2d 702, and accurately reflects our past practice.
[¶ 19] After paying homage to our past practice and precedent, the Court’s opinion departs from it and dramatically changes well-established practice for accepting defendants’ choices to proceed without counsel. Specifically, the Court:
(1) abandons the totality of circumstances test that has served us well for decades;
(2) reverses past practice that required development of a record of what a defendant knew regarding the risks and consequences of proceeding without counsel — including what the defendant here learned in consultation with counsel — before deciding that a court’s colloquy with a defendant was insufficient;
(3) holds that statements by counsel, after consultation with a defendant charged with misdemeanors, that the defendant understands a right and is waiving that right, are insufficient to support waiver of that right; and
(4) despite its disclaimer, mandates a mechanistic on-the-record colloquy between the defendant and the trial court that “begins and ends” the record that will be required to support allowing a defendant charged with misdemeanors to proceed without counsel, Court’s Opinion ¶ 8.
[¶ 20] The changes mandating a direct colloquy between the trial court and a misdemeanor defendant for a waiver of counsel to be valid, and limiting appellate review to the text of that colloquy, will impose a considerable additional workload on the trial courts at arraignments and other pretrial proceedings.
[¶ 21] The Court’s opinion may have another unintended consequence. By asserting that it is only applying current law on waiver of counsel, rather than acknowledging that it is changing current law and practice, the Court’s opinion may invite a flood of post-conviction petitions by unrepresented defendants asserting that their convictions resulted from a flawed process, particularly insufficient evidence of a colloquy directly between the trial court and the defendant.
[¶ 22] The Court changes the law regarding waiver of counsel by a misdemean- or defendant when the facts indicate that the waiver occurred in a direct colloquy between the court and the defendant, immediately after consultation with counsel, and with counsel still present and participating in the colloquy. Specifically, when Hill’s case was called at the docket call, Hill’s appointed counsel moved to withdraw, indicating that Hill had asked that counsel “recuse” himself from the case and that Hill wanted to represent himself at trial. After the court’s colloquy with Hill and its indication that it would allow Hill to represent himself, Hill’s counsel stated: “[I]f it puts your mind at ease, Your Hon- or, we have discussed this. Mr. Hill is highly intelligent ... and I believe he knows — he’s making a knowledgeable and informed decision. It may not be the deci *637 sion I would recommend, but he knows what he’s doing.”
[¶ 23] It will come as a considerable surprise to the trial courts to learn that, after hearing such a representation by a defendant’s counsel regarding waiver of a fundamental right, the trial court, in every misdemeanor case, must engage in a direct and structured colloquy with a defendant before approving the waiver of that right.
[¶ 24] Until today, we have regularly relied on such representations by counsel to support approval of waivers of critical rights. See State v. Ford, 2013 ME 96, ¶ 21, 82 A.3d 75 (“It is a lawyer’s duty to advise his or her client of all rights, including the right to testify. In the absence of evidence to the contrary, we must assume that [the defendant] was properly advised by his attorneys.” (citation omitted)); State v. Ouellette, 2006 ME 81, ¶ 27, 901 A.2d 800 (“[W]e can impose upon attorneys who formally enter their appearance for defendants in criminal cases the burden of advising their clients of constitutional and other rights and procedures regarding the criminal case.... ”).
[¶ 25] This is consistent with United States Supreme Court precedent. In discussing whether a guilty plea was entered “voluntarily, knowingly, and intelligently,” even in the context of a felony matter, the Supreme Court has held that “[w]here a defendant is represented by competent counsel, the court usually may rely on that counsel’s assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty.” Bradshaw v. Stumpf, 545 U.S. 175, 183, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005) (assessing the validity of a plea to felony charge when counsel represented that he explained to the defendant all elements of the charge and the defendant confirmed that the representation was true); see also United States v. Nguyen, 618 F.3d 72, 75 (1st Cir.2010) (noting that the trial court “was entitled to rely on [counsel’s] representations” regarding explanation of defendant’s rights and defendant’s understanding of rights and processes).
[¶ 26] To vacate the jury’s verdict, the Court ignores recent First Circuit precedent addressing the nature of the colloquy required when, as occurred here, a defendant, after consultation with counsel, discharges counsel and seeks to proceed to trial self-represented. Federal precedent is — or has been — important because, as we said in State v. Watson, 2006 ME 80, ¶ 14, 900 A.2d 702, “[t]he right to counsel afforded by article I, section 6 of the Maine Constitution is commensurate with that of the Sixth Amendment of the federal constitution.”
[¶ 27] Just last year, the First Circuit comprehensively addressed the constitutional standards for trial court approval and appellate review of a defendant’s waiver of his or her right to counsel at trial. United States v. Francois, 715 F.3d 21 (1st Cir.2013), involved felony charges: illegal acquisition and possession of firearms by a felon and improper use of stolen identity documents. Id. at 24. Francois refused to cooperate with appointed counsel in preparing his defense. Id. at 26-27. When the matter came on for trial, Francois stated that he wanted to represent himself. Id. at 27. The court warned Francois that representing himself was a “terrible idea,” a “catastrophic mistake,” and a “very bad idea.” Id. at 27. However, the court “did not go beyond these dire generalizations to give specific examples” of the risks and consequences of self-representation. Id. at 30. Francois persisted in his desire to represent himself. Id. at 27. The court allowed Francois to begin the trial representing himself with back-up counsel. Id. After Francois began the trial represent *638 ing himself, back-up counsel took over representation during the trial. Id. at 27-28.
[¶ 28] Following the jury’s verdict convicting Francois on all counts, Francois appealed, asserting, among other issues, that the District Court erred in allowing him to represent himself without engaging him in a direct colloquy regarding the risks and consequences of self-representation. Id. at 28. The First Circuit affirmed. Id. at 81.
[¶ 29] The First Circuit recognized that the District Court had given Francois imperfect advice regarding the risks and consequences of proceeding self-represented. Id. at 30-31. Despite this inadequate inquiry, the First Circuit held that it would consider the totality of the circumstances, including the record from pretrial proceedings, Francois’s interactions with counsel, and his discussions with the trial court regarding his rights generally and his choice to proceed self-represented. Id. From the totality of the available record, the First Circuit inferred that Francois was adequately aware of the risks and consequences of proceeding self-represented, and that the District Court’s imperfect advice regarding the risks and consequences of self-representation did not constitute reversible error. Id.
[¶ 30] Specifically, the First Circuit held that, even when a court’s Faretta warning[5] is “less thorough than it might be, we may nevertheless affirm a district court’s decision to allow a defendant to proceed pro se if ‘the record amply supports the lower court’s conclusion that [the defendant] was fully aware of the disadvantages he would face as a pro se defendant.’ ” Id. at 30 (quoting United States v. Kneeland, 148 F.3d 6, 12 (1st Cir.1998)). Here, the Court refuses to require development of a record, so we can never know if “the record amply supports the lower court’s conclusion that [the defendant] was fully aware of the disadvantages he would face as a pro se defendant.” Id.
[¶ 31] Over twenty years ago, in State v. Morrison, 567 A.2d 1350, 1351-53 (Me. 1990), we comprehensively addressed the standard of review when a defendant chose to represent himself or herself at trial, was convicted and then claimed that the court erred in allowing the defendant to proceed with his or her choice of self-representation. In Morrison, a former law enforcement officer was indicted for rape (Class A), 17-A M.R.S.A. § 252 (1983)[6] and related charges. Id. at 1351 & n.1. He appeared at arraignment, was advised of his rights, and indicated his choice to represent himself. Id. Family, friends, and law enforcement officers warned Morrison of the risks of self-representation and urged him to retain counsel. Id. at 1352. Morrison subsequently spoke directly with the District Attorney’s Office and proceeded to jury selection and a jury trial, representing himself at all stages. Id. at 1351-52. He was convicted of all counts. Id. at 1351.
[¶ 32] Following conviction, Morrison, with newly retained counsel, filed a motion for a new trial, asserting that he had not *639 made a knowing and intelligent waiver of his right to counsel. Id. at 1351. After two days of testimonial hearings, the trial court found that Morrison’s waiver of counsel and choice to represent himself were knowing and intelligent and denied the motion. Id. at 1351. Morrison appealed, maintaining that the court should not have permitted him to exercise his choice to represent himself. Id. The record indicated that while the trial court had advised Morrison of his rights and had assured that Morrison knew what his rights and responsibilities were in participating in jury selection and the trial process itself, the court had not, in a direct conversation, specifically warned Morrison of the risks and consequences of representing himself. Id. at 1352-53.
[¶ 33] Citing to United States Supreme Court precedent, we affirmed the conviction. Id. at 1351-53. We held that in evaluating Morrison’s choice to proceed self-represented, we would look at the totality of the circumstances, including Morrison’s knowledge of court processes as a former law enforcement officer, the rights and nature of the trial process that had been described to Morrison at his arraignment and prior to jury selection, and the possible consequences of the choice to plead or proceed to trial that Morrison had discussed with family, friends, and the District Attorney. Id. (citing Faretta v. California, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). With this background, we were confident that Morrison had adequate knowledge of the risks and consequences of self-representation at trial and that the trial court’s failure to specifically review with Morrison the risks and consequences of self-representation did not invalidate the process. Id.
[¶ 34] Rejecting Morrison’s argument that we should adopt a rule requiring the trial court to conduct a mechanistic colloquy before approving a defendant’s choice to proceed to trial self-represented, we held that:
We refuse to create any kind of prophylactic rule by which the conviction of any pro se defendant would be automatically vacated, regardless of the particular facts and circumstances surrounding that defendant’s waiver of counsel, if the trial court failed to give the defendant Miranda like warnings of the risks of self-representation and the benefits of counsel on the record. Neither Supreme Court case law nor our own lays out any such prophylactic rule.
Id. at 1353. We then expressly disavowed statements in an opinion issued the previous year, State v. Tomah, 560 A.2d 575 (Me.1989), that could have been read to favor such a prophylactic rule. Id.
[¶ 35] Watson stands for the same proposition. In Watson, we observed that “[c]ourts evaluate whether a defendant’s waiver of the right to counsel was voluntary, knowing, and intelligent by considering whether the defendant was informed of the right to counsel by the court, as well as the totality of relevant circumstances ‘including the background, experience, and conduct of the accused.’” 2006 ME 80, ¶ 17, 900 A.2d 702 (quoting Morrison, 567 A.2d at 1352). We noted that Watson had not been directly advised of the risks and consequences of proceeding self-represented, id. ¶ 32, but, considering the totality of the circumstances of the advice Watson had received and the knowledge he had, we affirmed the conviction, id. ¶ 33.[7]
*640 [¶ 36] The same totality of the circumstances test should be applied to our review of Hill’s after-the-fact challenge to being allowed to exercise his choice to represent himself, as in Francois, following consultation with his attorney. Having received assurance from defense counsel that Hill was knowledgeable and informed about his decision to proceed without counsel, and satisfying itself based on inquiry of Hill that he was acting voluntarily and wanted to waive counsel, the judge at the docket call had no obligation to inquire further. See Bradshaw, 545 U.S. at 183, 125 S.Ct. 2398; Nguyen, 618 F.3d at 75; Ouellette, 2006 ME 81, ¶27, 901 A.2d 800.
[¶ 37] Unlike Francois, nothing in the record here indicates the nature and extent of Hill’s attorney-client communications or what led counsel to advise the court that Hill was “making a knowledgeable and informed decision” to represent himself. However, some information about the extent of Hill’s knowledge of the risks and consequences of an OUI conviction was indicated at sentencing. There, Hill indicated “no problem with the jail time and the fines” but asked that the OUI conviction be changed to “reckless endangerment or reckless driving.” That comment referenced lesser offenses apparently discussed in plea negotiations with Hill but rejected by the State, as Hill stated “they were against that.” The record includes nothing regarding the nature and extent of plea negotiations that apparently occurred and the extent to which, as in Morrison, Hill may have learned about the risks and consequences of proceeding to trial without counsel.
[¶ 38] The Court’s refusal to require any record regarding the attorney-client communications that indicated that Hill was “making a knowledgeable and informed decision” is troubling. In Mom-son, we observed that “[n]ormally the record on a direct appeal is not adequate for us to review a defendant’s claim that his waiver of counsel was defective,” and that post-conviction review is better suited to the development of evidence focused on the facts and circumstances of the waiver of counsel “including the background, experience, and conduct of the accused.” 567 A.2d at 1352. In Morrison, we determined that two days of testimonial hearings on the motion for a new trial was an adequate substitute for a post-conviction hearing on the waiver of counsel issue, id., and we decided Morrison relying primarily on information and findings from the hearing on the motion for a new trial.
[¶ 39] Here, there has been no similar fact-finding proceeding to inform us of the nature and extent of discussions in attorney-client communications or plea negotiations, or of information in “the background, experience, and conduct of the accused,” Watson, 2006 ME 80, ¶ 17, 900 A.2d 702 (quoting Morrison, 567 A.2d at 1352), that may have informed the court on Hill’s knowledge of the risks and consequences of self-representation. In its change of practice, the Court now holds that such an inquiry is irrelevant, as the *641 record to be considered must “begin[] and end[]” with the structured on the record colloquy between the defendant and the trial court. Court’s Opinion ¶ 8.
[¶ 40] The Court’s opinion attaches significance to the fact that Hill’s counsel’s representation that Hill was highly intelligent, that he was making a knowledgeable and informed decision, and that “he knows what he’s doing,” came immediately after, rather than before, the trial court had approved counsel’s motion to withdraw. Court’s Opinion ¶ 11. However, there is no doubt that Hill’s conference with counsel occurred before the colloquy with the trial court. If the totality of the circumstances standard of review remained valid, the substance of Hill’s conference with counsel, not when it was disclosed to the trial court, would be the proper subject of inquiry in review of whether Hill’s decision to proceed without counsel was voluntary, knowing, and intelligent. See Ford, 2018 ME 96, ¶¶ 18-23, 82 A.3d 75 (affirming convictions for attempted murder and other crimes by applying the totality of the circumstances test and assuming that Ford was properly advised by his attorneys in a case when there was no colloquy at all between the defendant and the court regarding defendant’s fundamental right to testify or to remain silent, when the defendant contended on appeal that, as here, his conviction should be vacated because there was no colloquy with the court regarding waiver of the fundamental right to testify).
[¶ 41] The concurring opinion observes that “in the absence of a record demonstrating that the defendant had been advised of the pitfalls of self-representation and a finding that he knowingly, voluntarily, and intelligently chose, nonetheless, to go forward to trial without counsel, the Court is left with no choice but to remand for a new trial.” Concurring Opinion ¶ 16. The Court, of course, does have a choice, it can follow our past precedent and remand for findings to learn the totality of circumstances of what Hill knew and what he was advised by counsel and others regarding the risks and consequences of self-representation. Instead, the Court casts aside past precedent, dismisses any need for a totality of the circumstances inquiry, and announces that, henceforth, only the colloquy between that trial court and the defendant will be considered in review of waiver of the right to be represented by counsel.
[¶ 42] Trial courts must deal daily with dynamic and difficult live situations before them. Appellate review of those trial court actions even on a “cold” record is difficult enough, but such “cold” record review should be preferred to “no record” review. Deferentially evaluating trial court responses to such events on appeal cannot be done through mechanistic formulas or absolutist prohibitions that disregard the totality of the circumstances before the trial court; dismiss the need for a record of what led to the defendant’s actions in the trial court; and disrespect trial court actions that fail to perfectly apply formulaic rules to dynamic situations.
[¶ 43] The Court’s opinion represents the second time recently that we have failed to give due deference to trial court responses to live proceedings, abandoned our own past practice and precedent, and ignored current federal precedent in order to vacate a criminal conviction by determining that the trial court failed to apply a newly announced formula or prohibition. See State v. Wiley, 2013 ME 30, 61 A.3d 750 (abandoning clear error review of trial court fact-findings, disregarding past practice and precedent in Maine and current federal precedent, and, in the name of de novo review, substituting the Court’s own view about the facts, to vacate child sex abuse convictions with an announcement that, as a matter of law, interrogation us *642 ing promises and inducements can render any resulting confession involuntary).[8] Our trial courts’ approaches to dynamic and difficult situations deserve greater respect and deference, considering the totality of the circumstances before the trial courts, than is given by demands for perfection in application of mechanistic formulas or absolutist prohibitions.
[¶ 44] Because the record does not demonstrate that the advice Hill received from counsel and what he learned in plea negotiations or from other sources was insufficient to inform him of the risks and consequences of proceeding self-represented, his appeal should fail. Applying the proper totality of the circumstances test and considering the representations made by counsel after consulting with Hill, the record does not reflect that the advice that Hill received in this case was inadequate to convey a sufficient understanding of the risks and consequences of self-representation. See Ford, 2013 ME 96, ¶ 21, 82 A.3d 75 (“In the absence of evidence to the contrary, we must assume that [the defendant] was properly advised by his attorneys.”).
[¶ 45] I would affirm the trial court’s judgment or, in the alternative, I would remand for findings so that the totality of the circumstances of Hill’s choice to proceed without counsel could be deferentially reviewed on appeal.

. The First Circuit’s reference to a "Faretta warning” referenced Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), which held that a defendant could represent himself at trial if, after consideration of the totality of the circumstances, the trial court determined that the waiver of counsel was knowing and voluntary. Id. at 835, 95 S.Ct. 2525.

. Title 17-A M.R.S.A. § 252 was subsequently amended and was ultimately repealed by P.L. 1989, ch. 401, pt. A, § 3 (effective Sept. 30, 1989), which simultaneously repealed and replaced 17-A M.R.S. § 253 (Gross Sexual Assault).

. In a companion case, State v. Blumberg, decided as part of the Watson opinion, we did vacate a conviction of an individual who had represented himself after the trial court, find *640 ing that he had sufficient resources to retain counsel, declined to appoint counsel. State v. Watson, 2006 ME 80, ¶¶8-13, 34-36, 900 A.2d 702. The Blumberg opinion referenced excerpts from the paragraph in Tomah that had been explicitly disavowed in Morrison, 567 A.2d at 1353. Id. ¶ 35. Further, the Blumberg opinion is not entirely clear as to how trial court erred. Blumberg himself had implicitly acknowledged that there were risks and adverse consequences in proceeding self-represented. Id. ¶¶ 8-9. For that reason, he had requested that the court appoint counsel to represent him or to act as backup counsel. Id. ¶ 8. The court had declined to appoint counsel, not because it concluded that Blum-berg had voluntarily and knowingly waived his right to counsel, but because it found that Blumberg had adequate resources to retain counsel on his own. Id. ¶¶ 10-11.

. In a subsequent opinion, State v. Lowe, 2013 ME 92, ¶¶ 20-25, 81 A.3d 360, we have reinstated deferential, clear error review of trial court fact-findings regarding voluntariness of confessions.