MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2020 ME 59
Docket:       Kno-19-328
Submitted
  On Briefs:  February 26, 2020
Decided:      May 12, 2020

Panel:        MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

STEVE ANCTIL JR.[1]

v.

GLADYS CASSESE

PER CURIAM

[¶1]  Steve Anctil Jr. appeals from a judgment entered by the District Court (Rockland, *Mathews, J.*) dismissing his complaint for protection from harassment against Gladys Cassese.  We affirm.

## I.  BACKGROUND

[¶2]   Anctil alleged the following facts in his complaint.   On January 14, 2019, while he was an inmate at the Maine State Prison, Anctil appeared in court in connection with a matter separate from this one.  The court gave him "paperwork" that contained, among other things, the name and

---

[1] Cognizant of the federal Violence Against Women Act, we note that this matter does not involve a judicial determination that domestic violence or stalking occurred, and we therefore name the plaintiff in our decision.  *See* 18 U.S.C.S. §§ 2261, 2261A, 2265(d)(3), 2266 (LEXIS through Pub. L. No. 116-140).

contact information of an attorney appointed to represent him. When he returned to the prison, a correctional officer confiscated the paperwork, telling Anctil that he did not think Anctil should have it but that he would ask the unit manager. Cassese was the unit manager, and she ordered the officer not to return the paperwork. Anctil requested the paperwork two weeks later. Cassese denied his request, claiming that allowing him to possess the paperwork would present a security risk. Cassese declined to reconsider despite Anctil's comment that all of the information contained in the paperwork was available to the public, and "[a]nybody c[ould] get it by calling the [c]ourt and requesting it." In his request for a protection from harassment order against Cassese, Anctil alleged that his claim involved "an allegation of domestic or dating violence, sexual assault or stalking."

[¶3] The court set a hearing on Anctil's complaint for May 17, 2019, and then continued the hearing until July 24, 2019. Cassese then filed a motion to dismiss Anctil's complaint, arguing that his allegations were insufficient to state a claim of harassment as that term is defined by statute. *See* 5 M.R.S. § 4651(2) (2020); M.R. Civ. P. 12(b)(6). In his written response, Anctil acknowledged that on January 28, 2019, Cassese had provided him with his attorney's contact information after Anctil filed a grievance against her.

[¶4] Before the upcoming hearing date, by order dated July 18, 2019, the court granted Cassese's motion to dismiss, concluding that "[t]he complaint fail[ed] to state a basis upon which relief c[ould] be granted."[2] Anctil timely appeals. *See* 14 M.R.S. § 1901 (2020); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶5] Anctil argues that the court was required to hold a hearing before adjudicating his complaint and, in the alternative, that the court erred when it dismissed his complaint pursuant to Rule 12(b)(6).

## A. Adjudication Without a Hearing

[¶6] Anctil first argues that the protection from harassment statutes prohibited the court from adjudicating his complaint without first holding a hearing. "The interpretation of a statute, including whether or not the statute requires a hearing, is an issue of law that we review de novo." *Copp v. Liberty*, 2008 ME 97, ¶ 6, 952 A.2d 976 (quotation marks omitted). "We look first to the

---

[2] The court also stated that it was granting Cassese's motion on the additional ground that it lacked subject matter jurisdiction. Cassese had argued, in her motion to dismiss, that the court could not adjudicate Anctil's complaint because it "involve[d] an allegation of harassment by a prisoner against a prison employee while that employee [was] acting in her official capacity at the Maine State Prison." She acknowledged, however, that the District Court "is generally vested with jurisdiction and authority over protection from harassment complaints." *See* 5 M.R.S. § 4652 (2020). To the extent that the court's determination was based on principles of sovereign immunity, we need not address it, given our ruling, *see infra* ¶¶ 10-18, that Anctil's complaint failed to state a claim upon which relief could be granted. *Cf. Mulero-Carrillo v. Román-Hernández*, 790 F.3d 99, 105 (1st Cir. 2015) (bypassing sovereign immunity issues to review and affirm a Rule 12(b)(6) dismissal).

4

plain language of the statute to determine its meaning if we can do so while avoiding absurd, illogical, or inconsistent results." *State v. Conroy*, 2020 ME 22, ¶ 19, --- A.3d ---. "In interpreting a statute, we must consider the entire statutory scheme in order to achieve a harmonious result." *Town of N. Yarmouth v. Moulton*, 1998 ME 96, ¶ 5, 710 A.2d 252.

[¶7]  The relevant statutes contain several provisions that touch on the role of a hearing in a protection from harassment proceeding.  First, 5 M.R.S. § 4654(1) (2020) provides that "[a] hearing must be held at which the plaintiff shall prove the allegation of harassment by a preponderance of the evidence." Another of the protection from harassment statutes provides, however, that the court "may grant" a protection from harassment order "after a hearing and upon finding that the defendant has committed the harassment alleged." 5 M.R.S. § 4655(1) (2020) (emphasis added).  Finally, "[u]nless otherwise indicated in [the] chapter [governing protection from harassment], all proceedings shall be in accordance with the Maine Rules of Civil Procedure." 5 M.R.S. § 4658(1) (2020).

[¶8]  Although subsection 4654(1) contains the phrase "[a] hearing must be held," viewing that statute alongside the provisions of sections 4655(1) and 4658(1) quoted above, we cannot conclude that a court is prohibited in all

circumstances from dismissing a protection from harassment complaint without first holding a hearing. Because we can discern no reason for the Legislature to require the court to hold a hearing on a complaint that fails, on its face, to state a claim, we agree with Cassese that it would be illogical to interpret the statute to require a hearing in those circumstances. *See* M.R. Civ. P. 1; *Merrifield v. Hadlock*, 2009 ME 1, ¶ 6, 961 A.2d 1107 ("[T]he overall purpose of the Rules of Civil Procedure . . . is to ensure the speedy and inexpensive resolution of a case.").

[¶9] This conclusion is consistent with our decision in *Nadeau v. Frydrych*, in which the trial court dismissed a protection from harassment complaint on Rule 12(b)(6) grounds "after a non-testimonial hearing." 2014 ME 154, ¶¶ 1, 4, 108 A.3d 1254. We vacated the judgment based on our conclusion that "the allegations in the complaint [were] sufficient to overcome a 12(b)(6) motion to dismiss"—not because the court had failed to hold an evidentiary hearing. *Id.* ¶ 9; *see Staples v. Michaud*, 2003 ME 133, ¶ 1 n.1, 836 A.2d 1288 (rejecting a similar argument where the applicable statute, 5 M.R.S.A. § 4654(1) (2002), provided that "[w]ithin 21 days of the filing of a petition, a hearing shall be held at which the plaintiff shall prove the allegation of harassment by a preponderance of the evidence"). Here, we conclude

6

expressly that section 4654(1) does not *always* preclude the court from adjudicating a protection from harassment complaint without first holding a hearing.

B.    Rule 12(b)(6) Dismissal

[¶10]   We now turn to address whether the trial court erred when it dismissed Anctil's complaint based on its conclusion that Anctil had failed to state a claim upon which relief could be granted.  *See* M.R. Civ. P. 12(b)(6).  We review the legal sufficiency of the complaint de novo, viewing the allegations in the complaint "in the light most favorable to the plaintiff to determine whether [the complaint] sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory."  *Ramsey v. Baxter Title Co.*, 2012 ME 113, ¶ 6, 54 A.3d 710 (quotation marks omitted). "A dismissal is proper only when it appears beyond doubt that a plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim."  *Bog Lake Co. v. Town of Northfield*, 2008 ME 37, ¶ 6, 942 A.2d 700 (quotation marks omitted).

[¶11]    As described above, a court may grant a protection from harassment order only "upon finding that the defendant has committed the harassment alleged."  5 M.R.S. § 4655(1).  Harassment is defined by statute in

two different ways.  *See* 5 M.R.S. § 4651(2).  Because the first involves "*[t]hree or more acts* of intimidation, confrontation, physical force or the threat of physical force," *see* 5 M.R.S. § 4651(2)(A) (emphasis added), it plainly does not apply here, so we do not discuss it further.  The second definition of harassment is:

> A single act or course of conduct constituting a violation of section 4681; Title 17, section 2931; or Title 17-A, section 201, 202, 203, 204, 207, 208, 209, 210, 210-A, 211, 253, 254, 255-A, 256, 258, 259-A, 259-B, 260, 261, 282, 283, 301, 302, 303, 506, 506-A, 511, 511-A, 556, 802, 805, 806, 852 or 853.

5 M.R.S. § 4651(2)(C).  Harassment "does not include any act protected by law." 5 M.R.S. § 4651(2).

[¶12]  Anctil argues that the allegations in his complaint were sufficient to allege harassment pursuant to this second definition because they allege a violation of either 17 M.R.S. § 2931 (2020) or 5 M.R.S. § 4681 (2020).[3] Section 2931 provides:

> A person may not, by force or threat of force, intentionally injure, intimidate or interfere with, or intentionally attempt to injure, intimidate or interfere with or intentionally oppress or threaten any other person in the free exercise or enjoyment of any right or privilege, secured to that person by the Constitution of Maine or laws of the State or by the United States Constitution or laws of the United States.

---

[3]  He also argues that he alleged violations of the stalking and criminal mischief statutes in his complaint.  *See* 17-A M.R.S. §§ 210-A(1)(A)(4), 806(1)(A) (2020).  We are not persuaded by those arguments.

"[I]ntentionally," as used in this section, means that it was the person's "conscious object to cause" the result of his or her conduct. 17-A M.R.S. § 35(1)(A) (2020); *see* 17 M.R.S. § 2931. Section 4681, part of the Maine Civil Rights Act, provides, similarly:

> Whenever any person, whether or not acting under color of law, intentionally interferes or attempts to intentionally interfere by physical force or violence against a person, damage or destruction of property or trespass on property or by the threat of physical force or violence against a person, damage or destruction of property or trespass on property with the exercise or enjoyment by any other person of rights secured by the United States Constitution or the laws of the United States or of rights secured by the Constitution of Maine or laws of the State or violates section 4684-B, the Attorney General may bring a civil action for injunctive or other appropriate equitable relief in order to protect the peaceable exercise or enjoyment of the rights secured.

[¶13] Anctil did not specify in his complaint which constitutional rights he claimed were at issue. In his brief on appeal, he argues that Cassese's conduct interfered with his rights to due process and to be free from unreasonable searches and seizures. He also implied, in his opposition to Cassese's motion to dismiss, that Cassese's conduct implicated his Sixth Amendment right to counsel.

[¶14] We first conclude that Anctil's search and seizure argument is unpersuasive because he had no reasonable expectation of privacy in the

paperwork at issue in the prison setting.[4] *See* U.S. Const. amend. IV; Me. Const. art. I, § 5; *Hudson v. Palmer*, 468 U.S. 517, 526-28 (1984) (explaining that "the right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order"); *State v. O'Rourke*, 2001 ME 163, ¶ 20, 792 A.2d 262 (concluding that a prisoner had no reasonable expectation of privacy in the contents of his prison locker).

[¶15]  We also disagree with Anctil's argument that the allegations in his complaint were sufficient to allege a due process violation.  *See* U.S. Const. amend. V.  "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson*, 468 U.S. at 533.  Here, Anctil acknowledges that a meaningful post-deprivation remedy—the prison grievance process—was available, and that he took advantage of it, resulting in

---

[4] "[W]hile persons imprisoned for crime enjoy many protections of the Constitution, it is also clear that imprisonment carries with it the circumscription or loss of many significant rights."  *Hudson v. Palmer*, 468 U.S. 517, 524 (1984).

the return fourteen days later of the information that was withdrawn from him.[5]

[¶16]  Nor were the allegations in Anctil's complaint sufficient to make out a claim that the confiscation of the paperwork at issue constituted a violation of Anctil's Sixth Amendment right to counsel.  *See* U.S. Const. amend. VI.  In general, a criminal defendant seeking to demonstrate that he was denied the right to the effective assistance of counsel must show that his legal representation was deficient and that the deficiency resulted in prejudice to his defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Addressing a claim that the government affirmatively interfered with a defendant's access to counsel in a criminal case, the Supreme Court has stated that the "[g]overnment violates the right to effective assistance when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense."  *Perry v. Leeke*, 488 U.S. 272, 280 (1989) (quotation marks omitted).  In circumstances that amount to a denial of the effective assistance of counsel at a "critical stage" of a trial, the prejudice required by *Strickland* is presumed,

---

[5]  To the extent that Anctil argues that the confiscation of his paperwork amounted to a violation of his right to meaningful access to the courts, *see LeGrand v. York Cty. Judge of Prob.*, 2017 ME 167, ¶ 34 & n.11, 168 A.3d 783 (citing Me. Const. art. I, §§ 6-A, 15), that argument is also unpersuasive because he did not allege that Cassese's conduct resulted in any actual injury to him.  *See Lewis v. Casey*, 518 U.S. 343, 349-51 (1996) (explaining that an inmate alleging a violation of his or her constitutional right of access to the courts "must show actual injury").

and the defendant therefore need not show actual injury. *See United States v. Cronic*, 466 U.S. 648, 659-60 (1984).

[¶17] Here, Anctil did not allege that Cassese's action resulted in a denial of access to his court-appointed counsel during a critical stage of a criminal prosecution against him.[6] *See* U.S. Const. amend. VI; Me. Const. art. 1, § 6; *Van v. Jones*, 475 F.3d 292, 312-15 (6th Cir. 2007) (cataloging the Supreme Court's tests for determining whether a given proceeding constitutes a critical stage); *State v. Hill*, 2014 ME 16, ¶ 5 n.1, 86 A.3d 628 (noting that "[t]he right to counsel afforded by the Maine Constitution is coextensive with that of the Sixth Amendment"). He also alleged no actual injury or prejudice resulting from the confiscation of his court paperwork, or even that the confiscation actually prevented him from contacting his attorney.[7] *Cf. Strickland*, 466 U.S. at 687. Under these circumstances, the allegations in Anctil's complaint failed to state a claim that Cassese intentionally interfered with his Sixth Amendment right to counsel.

---

[6] Indeed, although we can make inferences from filings in the record outside of Anctil's complaint for protection from harassment, Anctil did not allege that the "court paperwork" confiscated from him was related to a criminal case at all.

[7] As we have noted, *see supra* ¶ 2, Anctil alleged that he told Cassese that the information in the paperwork was available to anyone who "call[ed] the [c]ourt and request[ed] it."

12

[¶18]  Finally, blanketing each of these constitutional claims is the additional requirement that Anctil prove that Cassese acted intentionally and "by force or threat of force," 17 M.R.S. § 2931, or by actual or threatened "physical force or violence . . . , damage or destruction of property[,] or trespass on property," 5 M.R.S. § 4681(1).  Even viewing the allegations in the complaint in the light most favorable to Anctil, *see Ramsey*, 2012 ME 113, ¶ 6, 54 A.3d 710, we cannot conclude that they are sufficient to state a claim on these elements. *See* M.R. Civ. P. 12(b)(6); *Chapman v. Robinson*, 2012 ME 141, ¶ 12, 58 A.3d 1123.

The entry is:

Judgment affirmed.

---

Steve Anctil Jr., appellant pro se

Aaron M. Frey, Attorney General, and Alisa Ross, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Gladys Cassese

Rockland District Court docket number PA-2019-45