STATE OF MAINE
ANDROSCOGGIN, ss

SUPERIOR COURT
DOCKET NO. CV-20-71

TPL Financial Services, LLC,         )
                                     )
          *Plaintiff,*               )
                                     )
v.                                   )
                                     )
A.L. Doggett, Inc.,                  )
Christopher R. Breau,                )
Bald Eagle, Inc.,                    )
Just Taxes, LLC,                     )
Virginia Fowler-Rawls,               )
W.H. Green & Sons, Inc.,             )
Apex Electric, LLC,                  )
Trombley Redi-Mix, Inc.,             )
Simard Constructions, Inc.,          )
Michael J. White, *and*              )
JBBC, Inc.                           )
                                     )
          *Defendants.*              )

RECEIVED & FILED

NOV 15 2020

ANDROSCOGGIN
SUPERIOR COURT

**Order on Motions to Dismiss
Counts VII - IX**

In June 2019, A.L. Doggett, Inc. contracted with Bald Eagle, Inc. to undertake tank installation and related work at Bald Eagle's service station in Eagle Lake, Maine. Because A.L. Doggett required financing in order to do the Bald Eagle project, it entered into a financing agreement with Plaintiff in July 2019. Plaintiff thereafter advanced money for the project which has not been paid back to it.

A.L. Doggett commenced work and eventually billed Bald Eagle for $136,073.08 which remains unpaid. W.H. Green & Sons, Inc.; Apex Electric, LLC; Trombley Redi-Mix, Inc.; Simard Construction, Inc.; Michael J. White; and JBBC, Inc. are all subcontractors of A.L. Doggett. In May 2020, Bald Eagle obtained financing from FAME. When they closed, Bald Eagle paid $31,221.19 to the various subcontractors and did not pay anything to Plaintiff,

1

allegedly contrary to the terms of the Customer Notification and Consent it had signed. This suit followed.

Counts VII through IX of the Complaint seek damages pursuant to the Maine Uniform Fraudulent Transfer Act against Bald Eagle and the six subcontractor defendants. Defendants Bald Eagle, Inc., Simard Constructions, Inc., JBBC, Inc., Trombley Redi-Mix, Inc., and W.H. Green & Sons, Inc. have moved to dismiss Counts VII through IX The motions are brought pursuant to M.R. Civ. P. 12(b)(6) for failure to state a claim and failure to allege the claims with sufficient particularity pursuant to M.R. Civ. P. 9(b).

Specifically, Counts VII incorporates all prior allegations and alleges the transfers are avoidable pursuant to 14 M.R.S. § 3575(1)(A), as follows:

> 101. On or about May 20, 2020, Bald Eagle, with actual intent to hinder, delay or defraud TPL, which was a creditor of TPL at the time of the Transfers ..., made transfers of funds to Subcontractor Defendant [totally $31,221.19].
> 102. As a result of the Transfers, TPL, as creditor of Bald Eagle, has suffered damages.
> 103. Subcontractor Defendants were the initial transferees of the Transfers or the entities for whose benefit the Transfers were made or an immediate or mediate transferee of the initial transferee.
> 104. The transfers are avoidable pursuant to 14 M.R.S. § 3575(1)(A), TPL may recover from Bald Eagle and/or Subcontractor Defendants the Transfers or the value of the Transfers.

Count VIII additionally alleges the transfers are avoidable pursuant to 14 M.R.S. § 3575(1)(B) as follows:

> 106. Before and after the Transfers, Bald Eagle was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction.
> 107. Bald Eagle did not receive a reasonably equivalent value in exchange for the Transfers.
> 108. Before and after the Transfers, Bald Eagle intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.'

2

Finally, Count IX alleges the transfers are avoidable pursuant to 14 M.R.S. § 3576(1) as follows:

114.    Bald Eagle made the Transfers to Subcontractor Defendants without receiving a reasonably equivalent value in exchange for the Transfers and Bald Eagle was insolvent at the time of the Transfers and/or Bald Eagle became insolvent as a result of the Transfers.

115.    As of May 20, 2020, unsecured creditors of Bald Eagle, including TPL, had claims against it in an amount of no less than $148,000.

These Counts incorporate the language of the Maine Uniform Fraudulent Transfer Act and state the elements of claims under the referenced subsections.

In reviewing the legal sufficiency of the complaint on a motion to dismiss under M.R. Civ. P. 12(b)(6), the material allegations of the complaint are taken as true and court examines the complaint "in the light most favorable to the plaintiff to determine whether [the complaint] sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Anctil v. Cassese*, 2020 ME 59, ¶ 10, 232 A.3d 245, 250, quoting *Ramsey v. Baxter Title Co.*, 2012 ME 113, ¶ 6, 54 A.3d 710 . The claim will not be dismissed unless it is clear that the plaintiff is not entitled to relief under any facts it might prove. *Id.*

Defendants first argue that M.R. Civ. P. 9(b) requires that the circumstances constituting fraud in each of these Counts must be stated with particularity, and they are not. The court disagrees. First, these are statutory claims and not common-law claims of fraud. It should be sufficient to allege the statutory elements.[1]  Second, Plaintiff has alleged with great deal of

---

[1] Defendants cite *Bean v. Cummings*, 2008 ME 18 for the proposition that a statutory perjury claim is like a claim of fraud and requires a higher pleading standard with circumstances pled with particularity. That case was not interpreting Rule 9(b) but rather the civil perjury statute itself, which explicitly requires that the claim identify the specific testimony alleged to be false at the initial filing of the claim. Moreover, the statute states its pleading and proof requirements must be strictly construed. 14 M.R.S. § 870. There are no such requirements in the Maine Uniform Fraudulent Transfer Act.

3

specificity all the events in the case. It remains to be seen whether there was in fact any fraudulent transfer, but the allegations are there.

Defendants also argue Count VII fails to state a claim because it is not sufficient to allege "actual intent to hinder, delay or defraud"; rather, Plaintiff must allege the specific facts to support that allegation. The court disagrees that any more specificity is required.

Finally, Defendants argue that Plaintiff has failed to allege any facts to show that Bald Eagle paid the Subcontractors "without receiving a reasonably equivalent value in exchange," and indeed that Plaintiff specifically alleged elsewhere in the Complaint that A.L. Doggett in fact did not pay the Subcontractors in full. While the court certainly questions whether Plaintiff can prove that Bald Eagle did not receive a reasonably equivalent value in exchange for the payments, Plaintiff is permitted to plead in the alternative and inconsistently, and it has done so here.

For these reasons, the motions to dismiss Counts VII, VIII and IX are denied. This Order may be incorporated on the docket of the case by reference pursuant to Me. R. Civ. P. 79(a).

Dated: 11/5/2020

Valerie Stanfill
Justice, Maine Superior Court

4

STATE OF MAINE
ANDROSCOGGIN, ss

RECEIVED & FILED

NOV 0 5 2020

ANDROSCOGGIN
SUPERIOR COURT

SUPERIOR COURT
DOCKET NO. CV-20-71

TPL Financial Services, LLC,

    *Plaintiff,*

v.

A.L. Doggett, Inc.,
Christopher R. Breau,
Bald Eagle, Inc.,
    *et al.,*

    *Defendants.*

)
)
)
)
)
)
)
)
)
)
)
)
)

**Attachment Order**

This matter comes before the court on Plaintiff's motion for prejudgment attachment against Defendants A.L. Doggett, Inc., Christopher R. Breau and Bald Eagle, Inc. Attachment is sought under Counts 1, 2, 3 and 6 of the Complaint. Attachment is not sought against the remaining defendants or pursuant to the remaining counts[1]. The court has considered Plaintiff's motion and all supporting documentation as well as Defendant Bald Eagle's opposition[2] and Plaintiff's reply thereto. No opposition has been filed by any other party.

Pursuant to M.R. Civ. P. 4A,

> No property may be attached unless such attachment for a specified amount is approved by order of the court. . . . upon a finding by the court that it is more likely than not that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the aggregate sum of the attachment and any liability insurance, bond, or other security, and any property or credits attached by other writ of attachment or by trustee process shown by the defendant to be available to satisfy the judgment.

---

[1] A separate order deals with the pending motions to dismiss Counts VII-IX of the Complaint.

[2] The court notes that even if Bald Eagle waived objection by not filing a timely objection to the motion for attachment, the court must still determine whether Plaintiff has in fact met the standards for attachment by examining the affidavits and documents submitted in support of the request. M.R. Civ. P. 4A(c). Because much of what the court discusses in this motion is based on Plaintiff's own filings, the same result would occur.

1

The standard for attachment on trustee process is the same. M.R. Civ. P. 4B(c). Of particular note in this case,

> [W]hether a party will receive an attachment depends on the party's proof, by a preponderance of the evidence, of both the likelihood of success in the underlying suit and the likelihood of recovering in that amount or greater. *Boisvert v. Boisvert*, 672 A.2d 96, 98 n.3 (Me. 1996).

*Estate of Summers v. Nisbet*, 2016 ME 88, ¶6. Thus, it is not enough for Plaintiff to establish that it is likely to succeed against some defendant; Plaintiff must establish a claim against each defendant against whom it seeks to recover, and must establish a basis for the amount sought from that party. *See also Bowman v. Dussault*, 425 A.2d 1325, 1329 (Me. 1981). In this case, both A.L. Doggett and Breau failed to answer and defaults were entered. Those defaults establish that Plaintiff is likely to succeed against them. The defaults do not establish, however, the amount to which Plaintiff may be entitled. Thus, the court considers the claims against each defendant separately.

## Factual Background

The undisputed facts show that in June 2019, A.L. Doggett entered into an agreement with Bald Eagle to undertake tank installation and related work at Bald Eagle's service station in Eagle Lake, Maine. Because A.L. Doggett required financing in order to do the Bald Eagle project, it entered into a financing agreement with Plaintiff in July 2019. Breau is a principal in A.L. Doggett, and executed a personal guarantee of A.L. Doggett's obligations under the financing agreement with Plaintiff. Plaintiff thereafter advanced a total of $107,000 to A.L. Doggett in October 2019 under the agreement which has not been paid back to it.

In October 2019, Bald Eagle executed a "Customer Notification and Consent" with A.L. Doggett, under which it agreed as follows:

2

Pursuant to our [A.L. Doggett's] agreement with TPL all right, title, and interest in our rights to payment under the Contract have been assigned to TPL. Your payment to TPL in full is the only valid discharge of your payment obligations under said Contract.

......

This Customer Notification and Consent ("Consent") addresses only the assignment of payment rights to TPL. All performance obligations under the CONTRACT remain our obligation exclusively.

The referenced "Contract" was the Bald Eagle project. At that point, Bald Eagle had already paid $59,951.92 for the project which had an original contract price of $179,855.76, with approximately $10,000 additional in change orders.

Thereafter A.L. Doggett billed Bald Eagle for $136,073.08 which remains unpaid. A.L. Doggett did not complete the project and apparently did not pay a number of the subcontractors, who are also named as defendants in this action[3]. In May 2020, Bald Eagle obtained financing from FAME. When they closed, Bald Eagle paid $31,221.19 to the various subcontractors and did not pay anything to either A.L. Doggett or to Plaintiff. This suit followed.

### A.L. Doggett

Plaintiff asserts that it is owed $148,755.84 from A.L. Doggett as of May 20, 2020 under the Financing Agreement (Count I). This amount of $148,755.84 is asserted to be due in the complaint, in the attachment motion and in the affidavit of Timothy Roach, but nowhere does Plaintiff explain where that figure comes from. The Financing Agreement requires A.L. Doggett to pay Plaintiff the amount of all payments received from Bald Eagle, but it does not appear that Bald Eagle made any payments to A.L. Doggett after the initial payment of $59,951.92 so that does not explain the demand for $148,755.84. Plaintiff asserts that pursuant to the Consent, Bald Eagle should have paid to it the $31,221.19 paid directly to subcontractors, but that does not

---

[3] Subcontractors named as defendants are: W.H. Green & Sons, Inc.; Apex Electric, LLC; Trombley Redi-Mix, Inc.; Simard Construction, Inc.; Michael J. White; and JBBC, Inc. These defendants are named only in Counts 7 – 9 and no attachment is sought against any of them.

3

explain the demand for $148,755.84. It is undisputed Plaintiff advanced $107,000 to A.L. Doggett under the Financing Agreement, but that does not explain the demand for $148,755.84. Plaintiff states that it seeks judgment and attachment in the "principal amount" of $148,755.84, "plus any and all additional interest, expenses, costs of collection, and attorney's fees", so presumably that amount does not include such additions. The court has examined all of the exhibits, has tried adding and subtracting the various sums referenced, and finds no calculation that fits. In short, the court is baffled as to explanation for the $148,755.84 sought.

As noted above, Plaintiff must establish "both the likelihood of success in the underlying suit and the likelihood of recovering in that amount or greater." *Estate of Summers*, 2016 ME 88, ¶6. Plaintiff has indeed established it is likely to recover $107,000 from A.L. Doggett, but has not established how much more than that it may be entitled to[4]. Therefore, the court orders that Plaintiff may have prejudgment attachment, including attachment on trustee process, in the amount of $107,000.00 against A.L. Doggett, Inc. on Counts 1 and 3 of the Complaint.

### Christopher R. Breau

As stated above, Breau executed a personal guarantee to Plaintiff for the debts of A.L. Doggett. Therefore, for the same reasons stated above, the court orders that Plaintiff may have prejudgment attachment, including attachment on trustee process, in the amount of $107,000.00 against Christopher R. Breau on Count VI of the Complaint..

### Bald Eagle, Inc.

Bald Eagle entered into a "Customer Notification and Consent" with A.L. Doggett. Despite Plaintiff's argument and assertions to the contrary, Plaintiff has not established that Bald

---

[4] Certainly Plaintiff is entitled to contract interest and other additions, but Plaintiff has not established how much that is.

4

Eagle has a contractual relationship with Plaintiff. The Consent assigned all of A.L. Doggett's right to payments from Bald Eagle to Plaintiff, such that Bald Eagle is obligated to make all payments for the project directly to Plaintiff and not to A.L. Doggett. Bald Eagle is not responsible for other obligations of A.L. Doggett to Plaintiff under the Consent. The Consent does not put Bald Eagle in A.L. Doggett's stead in relationship to Plaintiff. Rather, Bald Eagle is only responsible to pay any sums it owes A.L. Doggett directly to Plaintiff.

A.L. Doggett billed Bald Eagle for $136,073.08 for the project; under the Consent, Bald Eagle is required to pay Plaintiff directly rather than A.L. Doggett. Bald Eagle has not paid A.L. Doggett. Thus, Plaintiff is presumably claiming that Bald Eagle owes it $136,073.08 because that is the amount it owes A.L. Doggett. Bald Eagle, however, disputes that it owes that much to A.L. Doggett because A.L. Doggett did not complete its obligations included in that billing. Plaintiff does not address whether A.L. Doggett is entitled to the full $136,073.08 or whether the work was completed; it simply bases its claim on the fact that this is the amount billed. This is not sufficient for the court to find that it is more likely than not that Bald Eagle is liable to A.L. Doggett – and hence to Plaintiff – for that amount. No party attempts to parse out how much might be owed if not the total claimed. Thus, while the court is persuaded that Bald Eagle likely owes money to A.L. Doggett for the project and thus to Plaintiff, it is unclear to the court how much more is owed.

Plaintiff also claims that the $31,221.19 Bald Eagle paid to the subcontractors was really owed to A.L. Doggett and therefore should have been paid to Plaintiff under the Consent. While Bald Eagle argues a number of reasons why it felt it appropriate to pay the subcontractors directly, it agrees that these payments were A.L. Doggett's responsibility, and that had the contract proceeded as it was supposed to, these were monies it would have paid to A.L. Doggett.

Under these circumstances, the court agrees that it is more likely than not that the Consent required Bald Eagle to pay the money to Plaintiff, and thus that Plaintiff is entitled to an attachment against Bald Eagle in the amount of $31,221.19 on Count II of the Complaint.

Count III of the Complaint asserts a claim for unjust enrichment against Bald Eagle (as well as A.L. Doggett) in the amount of $107,000. Specifically, Plaintiff alleges that "TPL conferred benefits upon A.L. Doggett and Bald Eagle when it provided financing to and for the benefit of A.L. Doggett and Bald Eagle". *Complaint*, Paragraph 76. Plaintiff advanced $107,000 only to A.L. Doggett, however, and not to Bald Eagle. In its motion for attachment and supporting documents Plaintiff does not otherwise attempt to quantify any benefit it directly conferred upon Bald Eagle. Thus, even if Bald Eagle benefitted unjustly from the financing Plaintiff provided to A.L. Doggett, there is nothing from which the court could find the value of that benefit.[5]

*Conclusion and Attachment Order*

For all of the reasons stated above, Plaintiff's motion for attachment is granted in part and denied in part. The court orders as follows:

1. On Counts I and III of the Complaint, attachment, including attachment on trustee process, may be made against Defendant A.L. Doggett, Inc. and its property, both real and personal, tangible and intangible, and not otherwise exempt from attachment and attachment on trustee process in the amount of $107,000 plus prejudgment interest accruing from the date of filing of the Complaint.

2. On Count VI of the Complaint, attachment, including attachment on trustee process, may be made against Christopher R. Breau and his property, both real and personal, tangible and intangible, and not otherwise exempt from attachment and attachment on trustee process in the amount of $107,000 plus prejudgment interest accruing from the date of filing of the Complaint.

---

[5] Bald Eagle tries to argue that Plaintiff has "unclean hands" and is thus barred in its claims. The court does not reach this issue, because the "clean hands" doctrine does not apply to the contractual claim in Count II, and the court has found that Plaintiff has not sufficiently quantified any benefit conferred upon Bald Eagle in Count III.

3. On Count II of the Complaint, attachment, including attachment on trustee process, may be made against Defendant A.L. Doggett, Inc. and its property, both real and personal, tangible and intangible, and not otherwise exempt from attachment and attachment on trustee process in the amount of $31,221.19 plus prejudgment interest accruing from the date of filing of the Complaint.

This order may be incorporated on the docket of the case by reference pursuant to Me. R. Civ. P. 79(a).

Dated: 11/5/2020

Valerie Stanfill
Justice, Maine Superior Court

7